# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 26, 2005        Decided April 25, 2006

No. 04-7114

JOHN DOE ET AL.,
APPELLANTS

v.

METROPOLITAN POLICE DEPARTMENT
OF THE DISTRICT OF COLUMBIA ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cv02379)

---

*Damon W.D. Wright* argued the cause for the appellant. *Carol E. Bruce* was on brief. *Neal Goldfarb* entered an appearance.

*Mary L. Wilson*, Assistant Attorney General, District of Columbia, argued the cause for the appellees. *Robert J. Spagnoletti*, Attorney General, and *Edward E. Schwab*, Deputy Attorney General, District of Columbia, were on brief.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

2

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Metropolitan Police Department (MPD) of the District of Columbia (District) arrested the appellants, John Doe and Jane Doe I, II, III and IV, for underage possession and/or consumption of alcoholic beverages. The Does appeal the district court's dismissal of their consequent constitutional claims brought against the MPD and various D.C. officials. They argue that, because their arrests and detentions were based on their violation of a civil statute, probable cause to believe a crime had been committed did not exist; accordingly, the MPD's actions violated their Fourth Amendment rights. Because the version of the underage possession/consumption law in effect when John Doe was arrested was not unambiguously a civil offense, we affirm the district court's dismissal albeit on a different ground. The version of the law under which the four Jane Does were arrested, however, described an unambiguously civil offense and we therefore reverse the district court's dismissal of their claims and remand those claims for further proceedings.

I.

*A. Factual Background*

Between September 2000 and October 2003, MPD officers arrested each of the five Does, all under 21 years of age at the time of arrest, for allegedly violating the District's law prohibiting underage possession and/or consumption of alcoholic beverages.[1] In September 2000 John Doe was walking down H Street N.W. carrying a package of closed containers of

---

[1] The statute changed from 2000 to 2003, as we discuss *infra.*

beer.[2]  He was approached by a uniformed MPD officer who placed him under arrest.  The officer took him to the police station where he was held for seven hours.  Before being released, he was issued a citation to appear in court to answer a single charge of violating the underage possession law, D.C. Code § 25-130.[3]  The MPD arrested the four Jane Does between October 9 and October 11, 2003, pursuant to D.C. Code § 25-1002(a), the 2001 version of the underage possession and/or consumption law.[4]  Jane Doe I was arrested at a pub after undercover MPD officers were told she was consuming an alcoholic beverage belonging to another pub patron.  The officers removed her from the pub, arrested and handcuffed her, and transported her to the police station.  She was held for more than three hours, issued a citation for underage consumption of alcohol and released.  MPD officers arrested the other three Jane Does while they were walking together down Wisconsin Avenue N.W. carrying paper bags of closed containers of alcoholic beverages.  The three were arrested, their belongings were searched and they were taken to the police station.  Each was held for more than three hours and, before being released, each was issued a citation for underage possession of alcohol.

---

[2]We base the background facts on the allegations of the complaint. *See Wagener et al. v. SBC Pension Benefit Plan*,  407 F.3d 395, 401 (D.C. Cir. 2005) (on review of dismissal, we "accept[] the factual allegations made in the complaint as true and giv[e] plaintiffs the benefit of all inferences that can reasonably be drawn from their allegations").

[3]John Doe was arrested under the 1997 version of the law.  See note 9 *infra* for text.

[4]See note 10 *infra* for text.

In November 2003, the five Does filed a six-count complaint, individually and on behalf of a class of similarly situated persons,[5] against the MPD, the D.C. Office of the Attorney General, Mayor Anthony Williams and D.C. Corporation Counsel Robert Spagnoletti in their official capacities only, Chief of Police Charles H. Ramsey and Lieutenant Patrick Burke in their individual and official capacities, and an unspecified number of unidentified arresting officers in their individual and official capacities (collectively the District). They alleged the District's actions were unconstitutional under both the Fourth and Fifth Amendments to the United States Constitution and they sought equitable relief and money damages under 42 U.S.C. § 1983. The Does claimed that an arrest made under D.C.'s underage possession/consumption law was unlawful because the law set forth a civil, not criminal, offense; they were therefore arrested without probable cause in violation of the Fourth Amendment.[6] The Does asserted federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over various common law tort claims under 28 U.S.C. § 1367.[7] The Does also sought a temporary restraining order (TRO) and preliminary injunctive relief to prohibit the MPD from making any arrest in the future under the underage possession/consumption law.

---

[5]The district court dismissed the action before the plaintiffs moved for class certification. *See John Doe v. District of Columbia*, No. 03-02379, at 2 (D.D.C. Jan. 28, 2004).

[6]The Does do not argue their Fifth Amendment claim before us.

[7]The tort claims included false imprisonment, false arrest, negligence, assault and battery, intentional infliction of emotional distress and malicious prosecution. *See* Compl. ¶¶ 152–82.

The District opposed the TRO petition, arguing that the district court lacked jurisdiction based on our decision in *Barwood, Inc. v. District of Columbia*, 202 F.3d 290 (D.C. Cir. 2000), where we held that an arrest in violation of state law does not in and of itself implicate the Fourth Amendment. We declared that "[m]ere inconsistency with state, or even federal, law will not suffice to create a Fourth Amendment cause of action." *Barwood*, 202 F.3d at 294. The *Barwood* holding, the District claimed, meant that the district court was without subject-matter jurisdiction because an arrest in violation of state law failed to allege a constitutional claim. Mem. in Opp'n to Pl.'s Mot. for TRO at 2–4 (Record Document 5).

On January 28, 2004, the district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(1), concluding that "[f]or a Fourth Amendment violation to arise, the arrest must violate the Fourth Amendment of its own accord, for some reason other than the mere fact that the arrest was unauthorized under state law." *John Doe v. District of Columbia*, No. 03-2379, at 6 (D.D.C. Jan. 28, 2004). Because *Barwood* held that an arrest unauthorized under state law does not constitute a Fourth Amendment violation, the Does' "Fourth Amendment claims do not form a basis on which the Court can exercise jurisdiction over Plaintiffs' suit." *Id.* The Does timely appealed.

*B. Statutory Background*

In 1984, in response to federal legislation reducing transportation funding to any state that did not raise its legal drinking age to 21, *see* 23 U.S.C. § 158, the Council of the District of Columbia (D.C. Council) enacted a statute making it unlawful for any person under 21 to consume alcohol or for anyone to sell alcohol to any person under 21. Any underage person who misrepresented his age in order to purchase alcohol

was guilty of a misdemeanor, subject to a $25 fine or imprisonment for up to 10 days in the event of non-payment. D.C. Code § 25-130 (1991). In 1994 the Council amended section 25-130 to prohibit anyone under 21 years of age from possessing, purchasing or consuming alcoholic beverages. It also added a revocation of driving privileges penalty for violation of the law. D.C. Code § 25-130 (1995) (1994 law). The 1994 law deleted the misdemeanor offense of false representation of age; instead, it incorporated by cross-reference section 25-132, the catch-all provision of the District's Alcohol Beverage Control Act (ABC Act), which provided for imprisonment of up to one year for any violation thereof. *See* D.C. Code § 25-831 (2005) (formerly D.C. Code § 25-132 (1981)).

The following year, in *District of Columbia v. Morrissey*, 668 A.2d 792 (D.C. 1995), the D.C. Court of Appeals construed a violation of the 1994 law to constitute a misdemeanor because of its reference to the residual misdemeanor penalty in section 25-132. In *dictum*,[8] the writing judge noted that "[i]f the Council did not intend to make the conduct with which Morrissey has been charged a crime subject to trial by jury and punishable by, *inter alia*, a year in prison, then clarifying legislation should be enacted. Rewriting the statute to make it more humane transcends the judicial function." *Morrissey*, 668 A.2d at 801.

---

[8]The writing judge included the *dictum* in a separate section at the end of the opinion entitled "Judge Schwelb's Views." *Morrissey,* 668 A.2d at 800.

In 1997, the D.C. Council again amended section 25-130. *See* D.C. Code § 25-130(a) (1997 law).[9] The 1997 law no longer cross-referenced section 25-132 and instead added specific penalties for statutory violations, including a "*civil*" fine, "as an alternative sanction for any infraction." D.C. Code § 25-130(b-2) (emphasis added). The Council included a

_____

[9]The relevant text of the 1997 law is as follows:

§ 25-130. Purchase, possession, or consumption by persons under 21; misrepresentation of age; penalties.

(a) No person who is under 21 years of age shall purchase, attempt to purchase, possess, or drink any alcoholic beverage in the District . . . .

(b) No person shall falsely represent his or her age, or possess or present as proof of age an identification document which is any way fraudulent, for the purpose of procuring an alcoholic beverage in the District.

(b-1) Any person under 21 years of age who falsely represents his or her age for the purpose of procuring any alcoholic beverage shall be deemed guilty of a misdemeanor and be fined for each offense not more than $300, and in default in the payment shall be imprisoned not exceeding 30 days.

(b-2) A civil fine may be imposed as an alternative sanction for any infraction of this section . . . .

(c) In addition to the penalties provided in subsections (b-1) and (b-2) of this section, any person who violates any provision of this section shall be subject to the following additional penalties:

[(1)–(3): setting out revocation of driving privilege penalties].

*criminal* penalty for misrepresenting one's age in order to purchase alcohol; anyone under 21 who did so was guilty of a misdemeanor and subject to a $300 fine or imprisonment not to exceed 30 days for non-payment. *See* D.C. Code § 25-130(b-1). Despite the deletion of the reference to section 25-132 and notwithstanding the alternative *civil* fine sanction, the District continued to follow *Morrissey*, prosecuting underage possession violators criminally as it had under the 1994 law. As noted, the 1997 law was in effect when John Doe was arrested in September 2000.

In October 2000, Brett Cass, who had been convicted of underage possession of alcohol under the 1997 law and sentenced to probation, challenged his conviction, claiming the statute prescribed only a *civil* penalty for underage possession. In a decision issued three years later, the D.C. Court of Appeals found the 1997 law's criminal sanction inapplicable to underage possession and therefore concluded that a violation of subsection (a) of section 25-130 constituted a civil offense. *Cass v. District of Columbia*, 829 A.2d 480 (D.C. 2003). The court based its decision on two points of statutory interpretation and one point drawn from legislative history. First, it construed the misdemeanor provision set forth in section 25-130(b-1) to apply, in its own words, only to falsely representing one's age for the purpose of purchasing alcoholic beverages. Second, it considered the misdemeanor provision of section 25-132, the catch-all penalty statute no longer cross-referenced in section 25-130 but nonetheless applicable by its own terms to any violation of the ABC Act "for which no specific penalty is provided," inapplicable to underage possession because the 1997 law did provide specific penalties, to wit: the civil fine included in section 25-130(b-2) and the revocation of driving privileges included in section 25-130(c). Underage possession of alcohol, the court concluded, was punishable by civil fine only, with the

"additional" revocation of driving privileges sanction. *Id.* at 485. The court also found from the legislative history the fact that the Council "stripped the basis for the *Morrissey* holding from the statute and replaced it with lesser penalties lends strong support to our statutory analysis." *Id.* at 488. Accordingly, it reversed Cass's conviction.

Before the *Cass* decision, but after Cass brought his lawsuit, the District amended section 25-130 yet again. *See* D.C. Code § 25-1002 (2001) (2001 law).[10] The 2001 law had been enacted

---

[10]The relevant text of the 2001 law is as follows:

§ 25-1002. Purchase, possession, or consumption by person under 21; misrepresentation of age; penalties.

(a) No person who is under 21 years of age shall purchase, attempt to purchase, possess, or drink an alcoholic beverage in the District . . . .

(b)(1) No person shall falsely represent his or her age, or possess or present as proof of age an identification document which is in any way fraudulent, for the purpose of purchasing, possessing, or drinking an alcoholic beverage in the District.

(2) No person shall falsely represent his or her age, or possess or present as proof of age an identification document which is in any way fraudulent, for the purpose of purchasing, possessing, or drinking an alcoholic beverage in the District.

(3) For the purpose of determining valid representation of age, each person shall be required to present to the establishment owner or representative at least one form of valid identification, which shall have been issued by an agency of government (local, state, federal, or foreign) and shall contain the name, date of birth, signature, and photograph of the

individual.

(c) Any person under 21 years of age who falsely represents his or her age for the purpose of purchasing, possessing or drinking an alcoholic beverage shall be deemed guilty of a misdemeanor and, upon conviction, shall be fined for each offense not more than $300; provided, that in default of the payment of the fine, the person shall be imprisoned for a period not exceeding 30 days.

(d) In addition to the penalties provided in subsection (c) of this section, any person who violates any provision of this section shall be subject to the following penalties:

[(1)–(3): setting out revocation of driving privileges penalties].

(e)(1) *As an alternative sanction to the misdemeanor penalties provided in subsection (c)* of this section, *a person who violates subsection (a) or (b)* of this section shall be subject to the following *civil penalties*:

(A) upon the first violation, a penalty of $300;

(B) upon the second violation, a penalty of $600; and

(C) upon the third and subsequent violations, a penalty of $1,000 and the suspension of his or her driving privileges in the District for one year.

(e)(2) ABRA inspectors or officers of the Metropolitan Police Department may enforce the provisions of this subsection by issuing a notice of civil infraction for a violation of subsections (a) or

by the time the *Cass* opinion issued but the court in *Cass* made clear that its opinion did not decide any issue under the statute as amended, that is, under the 2001 law. *See Cass*, 829 A.2d at 481 n.1. The 2001 law retained the "in addition to" language of subsection (d), referring to revocation of driving privileges. The 2001 law also did not refer to section 25-132, the ABC Act misdemeanor penalty provision. It added language stating that anyone who violated subsection (a), the subsection prohibiting underage possession and/or consumption, was subject to "civil penalties" as an "alternative sanction to the misdemeanor penalties" provided in subsection (c) for misrepresenting one's age. *Compare* § 25-130(b-2) (1997) *with* § 25-1002(e-1) (2001). As noted, the 2001 law was in effect when Jane Does I through IV were arrested in October 2003.[11]

## II.

### *A. Jurisdiction*

We review de novo the dismissal of a complaint for lack of subject matter jurisdiction. *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003). The district court's 12(b)(1) dismissal relied on our holding in *Barwood*, *supra.* There, several suburban taxicab companies and their drivers sought injunctive relief from a "reciprocity regulation" promulgated by the D.C. Taxicab Commission that restricted the circumstances under which suburban taxicabs could transport District passengers and, most relevant here, subjected any

---

(b) of this section in accordance with Chapter 18 of Title 2. A violation of this subsection shall be adjudicated under Chapter 18 of Title 2.

(Emphases added.)

[11]The statute was amended yet again in 2004. *See* D.C. Code § 25-1002 (2004).

violator to criminal sanction.[12]  The *Barwood* plaintiffs asserted federal question jurisdiction by arguing, first, that any alteration in the reciprocity agreements that existed between suburban taxicab companies and their District counterparts as to when suburban taxicabs could operate in the District and vice-versa was exclusively within the mayor's power and therefore beyond the Commission's authority; accordingly, any arrest made pursuant to the *ultra vires* regulation violated the Fourth Amendment.  No probable cause could exist, the plaintiffs argued, if the law making the conduct criminal was itself invalid.  We agreed that their argument had "an initial plausibility: if an arrest without probable cause violates the Fourth Amendment, then surely one for which no cause *could* possibly exist must do so." *Barwood*, 202 F.3d at 294 (emphasis in original).  We concluded, however, that the argument proved too much and, if accepted, would transform "[e]very arrest claimed to violate state law" into a cause of action under federal law even if the plaintiff's challenge rested "on state law theories having no connection whatever with the policies underlying the Fourth Amendment. . . . Mere inconsistency with state, or even federal, law will not suffice to create a Fourth Amendment cause of action (unless, of course, the inconsistency is with the Fourth Amendment itself)." *Id.*  Because there were "no allegations of federal constitutional violations independent of the purported violations of District of Columbia law," we vacated the

---

[12]The District claimed that the authority to arrest a violator of the reciprocity regulation came from the District's General License Law, providing that "any person violating . . . any regulation made by the Council under the authority of this chapter shall upon conviction be fined not more than $300 or imprisoned for not more than 90 days." D.C. Code § 47-2846; *Barwood, Inc. v. District of Columbia*, No. 98-1901, at 6 (D.D.C. Feb. 16, 1999).

preliminary injunction and remanded with instructions to dismiss the complaint. *Id.* at 292.

The proper disposition of a complaint like the *Barwood* complaint—and the one we ultimately followed in that case, notwithstanding initially using 12(b)(1) language[13]—is not a dismissal based on lack of jurisdiction inasmuch as section 1983 itself provides the basis for federal question jurisdiction under 42 U.S.C. § 1331 and the court must assume jurisdiction before deciding whether a cause of action exists. *See Bell v. Hood*, 327 U.S. 678, 682 (1946) ("[T]he court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief . . . . [T]he failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."). Instead the complaint should be dismissed for failure to state a claim. *See Barwood*, 202 F.3d at 294 ("[M]ere inconsistency with state, or even federal, law will not suffice to create a Fourth Amendment *cause of action*.") (emphasis added).[14] If a claim brought under 42 U.S.C. § 1983 does not

---

[13] *See Barwood*, 202 F.3d at 292 ("Because there are no allegations of federal constitutional violations independent of the purported violations of District of Columbia law (or at any rate no such allegations for which plaintiffs have standing), there is *no subject matter jurisdiction*.") (emphasis added).

[14] Although the court in *Barwood* assumed that it had jurisdiction to decide whether a constitutional claim had been alleged, its wording was less than clear. *See supra* note 13. Because of the ambiguity, the district court mistakenly assumed that the *Barwood* court had held that it lacked jurisdiction. *See Doe v. District of Columbia*, No. 03-2379,

state a constitutional claim, it is subject to dismissal under Rule 12(b)(6), not Rule 12(b)(1). *See Fraternal Order of Police Dep't of Corr. Labor Comm. v. Anthony A. Williams*, 375 F.3d 1141, 1143–44 (D.C. Cir. 2004) (district court erred in granting motion to dismiss § 1983 claim for lack of subject matter jurisdiction under Rule 12(b)(1) because appellant "sought recovery directly under the Constitution or laws of the United States" and such claim could be dismissed under Rule 12(b)(1) only if it met "wholly insubstantial or frivolous" standard described in *Best v. Kelley*, 39 F.3d 328, 330 (D.C. Cir. 1994)); *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (affirming dismissal of § 1983 claim under Rule 12(b)(6) because malicious prosecution claim not cognizable under due process clause).

In *Barwood*, whether or not a suburban taxicab driver could be arrested for violating the criminal reciprocity regulation depended on the regulation's validity and its validity depended on whether or not the regulation had been properly adopted—an issue of state law that no law enforcement officer could be expected to resolve. Accordingly, the invalid enactment claim was insufficient to state a cause of action under the Constitution. By the same token, if an arrest under a *federal* criminal statute were similarly challenged on the ground that it had been invalidly enacted, a constitutional claim would not lie. If the underlying statute—federal or state—were plainly *civil*, however, *Barwood* would be inapplicable and a challenge to an arrest thereunder would state a Fourth Amendment cause of action.

*Barwood*'s relevance here, therefore, turns on whether the relevant underage possession and/or consumption law—both the 1997 and the 2001 versions—unambiguously made underage

---

at 6 (D.D.C. Jan 28, 2004).

possession or consumption a civil offense. If it did, the Does are correct in maintaining that *Barwood* is inapplicable. If, however, the law's civil nature was unclear, the District correctly asserts that *Barwood* would preclude the Does' cause of action because it would hinge on a state law issue, that is, whether the law created a civil or criminal offense. With these principles in mind, we turn first to John Doe's arrest which, as noted earlier, was based on the 1997 law.

### B. John Doe

Given that John Doe's arrest took place almost three years before the *Cass* decision, which interpreted the 1997 law to create a civil offense, the Does cannot argue that the 1997 law was "by definition" civil at the time of John Doe's arrest.[15] As the court in *Cass* noted, the 1997 law's cross-references to the punishments located in different sections and subsections "lead the reader in a circle," *Cass*, 829 A.2d at 481.[16] Subsection (b-2), for example, provided for the imposition of a civil fine as an

---

[15]They nevertheless *state*—without supporting argument—that the 1997 law was "by definition" a civil offense when John Doe was arrested. *See* Appellant's Br. 7.

[16]At oral argument the Does' counsel conceded the 1997 law's ambiguity, stating that whether it made underage possession a civil or criminal offense was not "crystal clear." Oral Arg. at 44:02. The uncertainty could have been avoided if the D.C. Council had simply added a subsection providing "Any person who is under 21 and possesses, purchases or consumes alcohol shall be subject only to civil penalties," rather than lifting penalties from other subsections via cross-reference. It has done so in other statutes. *See* D.C. Code § 50-1401.01(d-1) (anyone who operates a motor vehicle in the District with a license expired for less than ninety days "shall be subject to a civil fine . . . and shall not be subject to the criminal penalties contained in subsection (d) of this section").

"alternative sanction" for *any* infraction of section 25-130, indicating that a penalty other than a civil fine could also be imposed for underage possession. The alternative to the civil fine, however, could not have referred to the driving privileges penalties listed in subsection (c) because (c) stated that the driving privileges penalties were "in addition" to the penalties included in both subsection (b-1)—the misdemeanor penalty—and subsection (b-2)—the civil fine—for a violation "of any provision of this section." § 25-130(c). Because subsection (b-1) provided that anyone who falsely represented his age for the purpose of purchasing alcohol was "deemed guilty of a misdemeanor" and subsection (c) provided driving privileges revocation as an "additional" punishment, whether the 1997 law intended the (b-1) criminal penalty as an "alternative" to the civil fine for underage possession is unclear.[17] John Doe challenged the validity of his arrest under a local law that may or may not have constituted a crime at the time and, in so doing, he raised a state law issue only.[18]

---

[17]The legislative history is, not surprisingly, inconclusive; the preamble to the 1997 law states that the intent was "[t]o amend the [ABC Act] to provide for *criminal and civil* penalties for misrepresentation of age *or purchase, possession, or consumption* of alcoholic beverages by persons under 21 years of age." 43 D.C. Reg. 4515 (1996) (emphasis added).

[18]The District also argues that because the issue of whether the 1997 and 2001 laws authorized arrest for underage possession is an issue of unsettled state law, the *Pullman* abstention doctrine applies and supports affirming the dismissal. *Pullman* abstention "holds that 'when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.' " *See JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1124 (D.C. Cir. 2004) (quoting *Harris County*

Because the 1997 law was ambiguous as to whether underage possession constituted a crime, however, probable cause existed for the MPD officer to arrest John Doe. Whether probable cause exists is determined by looking at all of the facts and circumstances at the time of the arrest, including the knowledge and experience of the arresting officer. *See United States v. Kayode*, 254 F.3d 204, 209 (D.C. Cir. 2001), *cert. denied*, 534 U.S. 1147 (2002). If those facts and circumstances are "sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense," then the police officer will be found to have had probable cause and the resulting arrest valid. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The facts and circumstances surrounding John Doe's arrest were the following: An MPD officer, encountering an underage person in possession of alcoholic beverages, sought to enforce the local law prohibiting such possession; the District had routinely criminally prosecuted underage possession of alcohol in the past, *see* Compl. ¶ 34; whether or not such possession constituted a criminal or civil offense was unclear at the time of arrest; and the ambiguity was not removed until three years later when the *Cass* decision issued. A prudent person could have reasonably believed that underage possession of alcoholic beverages was a crime and that John Doe could be arrested for it. We therefore affirm the district court's dismissal of John Doe's claim, although we do so with prejudice and pursuant to Rule 12(b)(6)—not 12(b)(1)—because his claim failed to state a cause of action. *See Fraternal Order of Police Dep't of Corr. Labor Comm.*, 375 F.3d at 1143–44 (affirming—under Rule 12(b)(6)—dismissal originally granted under 12(b)(1)).

---

*Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975)). Because of our disposition, we express no opinion on the applicability of *Pullman* abstention—the District's "alternative theory." *See* Appellee's Br. 23.

*C. Jane Does (I, II, III and IV)*

The arrest of the four Jane Does under the 2001 law is another matter. That law, unlike the one governing John Doe's arrest in 2000, plainly establishes the underage possession and/or consumption of alcohol as a civil offense. In the 2001 version, the Council amended the civil fines provision to provide that any person who violates subsection (a) "*shall*" be subject to "the following *civil* penalties" as an "alternative" to the misdemeanor penalty imposed for false representation of one's age. § 25-1002 (e)(1) (emphases added). The change removed any ambiguity regarding whether a violation of subsection (a)—the underage possession and/or consumption provision—constituted an offense to which the misdemeanor penalty included in subsection (c) for misrepresenting one's age could apply. The plain language of the 2001 law manifested that it could not; application of the "alternative" misdemeanor sanction to a violation of subsection (a) was not permitted as it could have been under the 1997 law.

The four Jane Does, as alleged violators of subsection (a)—but not (c)—of the 2001 law, were subject to the civil penalties of subsection (e) and the additional revocation of driving privileges penalty of subsection (d). The newly-added subsection (e)(2) also supports the facially civil nature of the underage possession and consumption prohibition by providing that "officers of the Metropolitan Police Department may enforce the provisions of this subsection by issuing a notice of *civil* infraction for a violation of subsections (a) or (b) of this section." § 25-1002(e)(2) (emphasis added). Subsequent interpretations by the D.C. Superior Court, while too late to give notice to the MPD of the civil nature of a violation of subsection (a) at the time the four Jane Does were arrested in 2003, also support our conclusion. *See, e.g., District of Columbia v.*

*Kaplan*, Crim. No. D-1042-03, at 6–7 (D.C. Super. Ct. Dec. 24, 2003); *District of Columbia v. Rothkoff*, No. D-1896-01, at 5–7 (D.C. Super. Ct. Nov. 7, 2003).

Because the four Jane Does were arrested for a civil offense, their claims state a cause of action under the Fourth Amendment. The district court's dismissal of their complaint is therefore reversed and their case is remanded for further proceedings.[19]

---

[19]We note that while we have the authority to affirm the dismissal of the Jane Does' Fourth Amendment claim on the merits notwithstanding the district court dismissed for lack of jurisdiction, *see Flynt v. Rumsfeld*, 355 F.3d 697, 698 (D.C. Cir.), *cert. denied*, 543 U.S. 925 (2004), we decline to do so. Both parties have argued the merits of the Does' constitutional claim on appeal but several issues related to that claim have yet to be litigated, including whether the arresting officers are entitled to qualified immunity. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.") (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). We leave the resolution of this issue, and others, to the district court on remand. We do, however, comment briefly on one of our holdings.

In *United States v. Bookhardt*, 277 F.3d 558 (D.C. Cir. 2002), we held that an arrest "where the crime charged was not actually a crime" is invalid. *Id.* at 565 n.9. In *Bookhardt*, the government conceded that the offense for which a police officer had initially arrested Bookhardt (driving with a license expired for fewer than 90 days) was civil in nature under D.C. law and therefore did not authorize an arrest. It argued, however, that the arresting officer had probable cause to believe that Bookhardt had been driving recklessly, a criminal offense for which he could be arrested. We applied the rule established in *Whren v. United States*, 517 U.S. 806, 813 (1996), and expanded in *Arkansas v. Sullivan*, 532 U.S. 769, 772 (2001) (applying *Whren*

III.

For the foregoing reasons, we affirm the district court's dismissal of John Doe's claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and with prejudice. We reverse the dismissal of the four Jane Does' claims and remand for further proceedings consistent with this opinion.

*So ordered.*

objective probable cause rule for civil traffic stop to criminal arrest), which requires the court to determine the existence of probable cause objectively without regard to "[s]ubjective intentions [which] play no role in ordinary, probable-cause Fourth Amendment analysis." Although the civil offense for which Bookhardt was arrested did not authorize arrest, the offense for which there was probable cause to believe he had committed did so and his arrest was therefore lawful. *Bookhardt*, 277 F.3d at 565 & n.11 (citing *Whren* and *Sullivan*). Although the District labels the *Bookhardt* discussion *dictum* because of the government's concession there, we are not so sure. Whether the offense for which one is arrested is not in fact a crime or the offense *is* in fact a crime but the arresting officer lacks probable cause to believe the crime has been committed, "an arrest in either circumstance is equally invalid and the only question under our precedents is whether another, valid ground for arrest exists." *Bookhardt*, 277 F.3d at 565 n.9; *see also Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995) ("probable cause can only exist in relation to criminal conduct"); *Peterson v. City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995) (arrest lacked probable cause because arrestee lacked criminal intent); *Moore v. Marketplace Rest.*, 754 F.2d 1336, 1334–35 (7th Cir. 1985) (same). Because we remand, however, we need not decide the issue.